FRANKLIN V. HEWITT AND EDGAR T. BRACKETT, AS ASSIGNEES OF JOHN CAMPBELL AND JAMES C. SHAW, BANKRUPTS, RESPONDENTS, *v.* GEORGE NORTHUP AND JOHN CAMPBELL, APPELLANTS.

*Bankruptcy — mortgage given within four months of — pursuant to previous agreement — Respective rights of individual, and firm creditors.*

This action was brought by the assignees in bankruptcy of the firm of Campbell & Shaw to set aside, as fraudulent under the bankrupt act, a mortgage given by Campbell upon his individual property to the defendant Northup. The mortgage was given for an individual indebtedness of Campbell, for money loaned to him by Northup prior to April, 1874, upon the parol agreement that a mortgage should be given to secure the same upon the request of Northup. The individual property of Campbell exceeded in value his individual debts. The

mortgage was given August 11, and the petition in bankruptcy filed September 10, 1874.

Between these two dates judgments for large amounts were obtained against the firm. *Held*, that under well settled principles of equity and the provisions of the bankrupt act, Northup was entitled to be paid out of the individual property of Campbell in preference to the firm creditors, and that the mere conversion of his equitable lien upon the individual property into a legal lien, by the giving of the mortgage, did not confer upon Northup any preference over the firm creditors forbidden by the bankrupt act.

APPEAL from a judgment in favor of the plaintiffs, entered upon the trial of this action by the court without a jury.

*Batcheller & Hill*, for the appellants.

*A. Pond*, for the respondents.

BOARDMAN, J. :

Plaintiffs are assignees in bankruptcy of Campbell & Shaw; the petition of bankruptcy was filed September 10, 1874; the insolvency was of the partnership of Campbell & Shaw; Campbell, however, had individual property in excess of his individual debts. On the 10th of August, 1874, Campbell executed a mortgage of $2,000 on his individual property, to secure an individual debt to the defendant Northup, which was recorded; this mortgage was given in pursuance of a parol contract, that it should be given when Northup asked for it. The indebtedness of Campbell to Northup was for money lent by the latter to the former, prior to April, 1874, and *for some interest accrued thereon; no doubt exists of the honesty of such indebtedness*; on taking the mortgage, Northup gave up to Campbell his notes, given for the lent money. Between the 10th of August and 10th of September, 1874, creditors of the firm of Campbell & Shaw obtained judgments for large amounts against the firm, which judgments were duly docketed, and became a lien upon the individual real estate of said Campbell subsequent to said mortgage. The plaintiff, having been appointed assignee in bankruptcy of said Campbell & Shaw, now brings this action to set aside said mortgage as a fraudulent transfer or incumbrance of the property of said Campbell, within four months before the filing of the petition; the decision of the Special Term sustains the

plaintiff's claim, and sets aside the defendant Northup's mortgage as against the plaintiffs. The result of such a judgment, if sustained, will be to give the judgment creditors of Campbell & Shaw, for partnership debts, the first lien upon the individual real estate of Campbell, one of the partners ; it also seems to follow as a legal consequence, under section 5021 of the United States Revised Statutes (page 976), that Northup, although an honest creditor of Campbell, will not be allowed to prove his debt in bankruptcy. These are serious consequences ; are they such as justly flow from the transaction ? To determine these questions, we must ascertain the relations of the several parties towards each other and their relative rights. I do not consider the question of plaintiff's right to bring this action in a State court, which may be doubted.

By the well settled principles of equity, Northup, being an individual creditor of Campbell, was entitled to payment of the debt out of his individual property in preference to the creditors of the partnership firm of Campbell & Shaw. ( *Wilder* v. *Keeler;* 3 Paige, 167 ; *Payne* v. *Matthews,* 6 id., 19 ; *In re Foot,* 12 Bank. Reg., 337.)

This distinction between the rights of partnership debtors and individual debtors is preserved in the bankrupt law (U. S. Stat., § 5121), whereby the same rule must be applied in the marshaling of assets and in payment of debts.

Under these principles it is plain that Northup had an equitable lien upon Campbell's separate estate, in preference to the general creditors of Campbell & Shaw. The mortgage given by Campbell to Northup created a legal lien in place of such equitable lien, and thereby preserved his preference over the legal lien by judgment acquired by the firm creditors prior to bankruptcy proceedings. The relations between the individual and firm creditors were not changed by giving the mortgage; the mortgage, when given, gave to Northup no preference which he did not already possess ; the firm creditors, therefore, lost nothing to which they were entitled ; hence it follows that no preference was given to any creditor of Campbell ; without a preference given, there could be no fraudulent intent to defeat or delay the operation of the bankrupt act, under the seventh subdivision of section 5021, United States Revised Statutes.

These views are confirmed by several adjudged cases. In *Bernhisel* v. *Firman* (22 Wall., 170–178) it was held that a new mortgage, given within four months before bankruptcy proceedings, in lieu of a prior mortgage which was thereupon satisfied, is not open to attack under the bankrupt law as an illegal preference; the learned judge, quoting from *Starr* v. *Ellis* (6 Johns. Ch., 393), says: "It is a rule in equity that an incumbrance shall be kept alive, or considered extinguished, as shall most advance the justice of the case." To the same effect is *Sawyer* v. *Turpin* (1 Otto, 114). It was there held that a chattel mortgage, given in lieu of a prior bill of sale without possession of the property, could not be impeached as a fraudulent preference under the bankrupt act, though given within four months before bankruptcy. The judge says: "It is too well settled to require discussion, that an exchange of securities within the four months is not a fraudulent preference within the meaning of the bankrupt law, even when the debtor and creditor know that the latter was insolvent, if the security given up is a valid one when the exchange is made, and if it be undoubtedly of equal value with the security substituted for it." There are many other cases to the same effect. (*Cook* v. *Tullis*, 18 Wall, 332; *Clark* v. *Iselin*, 21 id., 360; *Watson* v. *Taylor*, id., 378; *Montgomery* v. *Bucyrus Machine Works*, 2 Otto, 257; *Nat. Bk. of Pittsburg* v. *Brady's Bend Co.*, 5 Bank. Reg., 492; *In re Weaver*, 9 id., 132.)

There is another principle which in my view tends to confirm the result indicated. The assignee takes his estate subject to every equitable claim existing against it on the part of third persons; ordinarily the assignee stands in no better position than the assignor; hence it has been held that a contract for a mortgage or sale of real estate is preferred to judgments recovered after the contract; equity treats the agreement for a mortgage as a specific lien on the land. (*In the Matter of Howe*, 1 Paige, 125.) So it is held, that "if a man mortgages by a defective conveyance and there are subsequent creditors whose debts did not originally affect the land, equity will supply such defective conveyance against such subsequent incumbrancers, who acquired a legal title afterwards, for since the subsequent creditors did not originally take the lands for their security, nor had in view an intention to affect them, when

afterwards the lands are affected and they come in under the very person that is obliged, in conscience, to make the defective security good, they stand in his place, and shall be postponed to such defective conveyance." (*Burgh* v. *Francis*, 1 Eq. Cas. Ab., 320.) To the same effect is *Burn* v. *Burn* (3 Vesey, Jr., 582); *Finch* v. *Earl of Winchelsea* (1 Peere Williams, 282); and other authorities cited by chancellor in *Matter of Howe* (1 Paige, 129, 130).

It is not necessary to hold that under our bankrupt law a debtor may give preference to one creditor over other creditors of the same degree, by the aid of a secret equity, or by virtue of an antecedent promise. (*In re Graham* v. *Stark*, 3 Bank. Reg., 357 [large ed., 93].) Indeed, as between such creditors, there should be no prevailing equity; the object and intent of the law is to prevent any such preference, and to compel a *pro rata* distribution of the assets of the bankrupt equally among creditors of the same class; but we have seen that Northup is not a creditor of the same class with the judgment creditors; he is entitled to be first paid out of Campbell's individual property, and it is neither equitable nor just that creditors of the firm, by judgment, should be preferred to him in hostility to the law applicable to such cases, and in evident violation of the spirit and intent of the bankrupt law; especially is this true when such judgments are subsequent to the equitable, if not legal lien of Northup's mortgage, and the rights of judgment creditors are in no respect worse than as by law is provided for them.

If these conclusions are not correct, Northup intended a fraud upon the bankrupt law. While endeavoring in good faith to secure his debt out of property which the law says shall first be applied to that purpose, he must have offended against that law, and as a consequence he shall not be allowed to prove his debt in bankruptcy, or receive any share of the bankrupt's estate. I think such consequences cannot, in justice and good conscience, result from the facts in this case.

The judgment should therefore be reversed, and a new trial granted, with costs to abide the event.

LEARNED, P. J., concurs.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment reversed, and new trial granted, costs to abide event.